**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

|  |  |
|---|---|
| KALSHIEX LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>BRENNA BIRD, in her official capacity as Attorney General of Iowa; the IOWA RACING & GAMING COMMISSION; TINA EICK, in her official capacity as Administrator of the Iowa Racing & Gaming Commission; AMY BURKHART, in her official capacity as Chair of the Iowa Racing & Gaming Commission; DARYL OLSEN, in his official capacity as Vice Chair of the Iowa Racing & Gaming Commission; MICHAEL BOAL, in his official capacity as Member of the Iowa Racing & Gaming Commission; ALAN OSTERGREN, in his official capacity as Member of the Iowa Racing & Gaming Commission,<br><br>*Defendants.* | Case No.: 4:26cv00109-SHL-HCA<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF A PRELIMINARY INJUNCTION** |

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

      A.     Kalshi Has Standing and a Cause of Action Under *Ex parte Young*. .................... 1

           1.     Kalshi Has Standing to Seek Relief. ............................................................ 1

           2.     Kalshi's Claims Are Authorized Under *Ex parte Young*. ........................... 2

      B.     The CEA Preempts Iowa's Gambling Laws as Applied to Kalshi's Event
Contracts. ................................................................................................................ 3

           1.     Kalshi's Sports Event Contracts are Swaps. ............................................... 3

           2.     Iowa Law is Preempted. ............................................................................... 5

      C.     The Other Preliminary Injunction Factors Weigh in Kalshi's Favor. .................... 8

           1.     Kalshi Will Suffer Irreparable Harm Without a Preliminary
Injunction. .................................................................................................... 8

           2.     Balance of the Equities and Public Interest. ............................................... 9

CONCLUSION ............................................................................................................................... 9

## TABLE OF AUTHORITIES

**Cases**                                                                                                           **Page(s)**

*281 Care Comm. v. Arneson*,
  638 F.3d 621 (8th Cir. 2011) ............................................................................................2, 3

*Am. Agric. Movement, Inc. v. Bd. of Trade of Chi.*,
  977 F.2d 1147 (7th Cir. 1992) ..............................................................................................7

*Arizona v. United States*,
  567 U.S. 387 (2012)..........................................................................................................6, 9

*BNSF Ry. Co. v. Hiett*,
  22 F.4th 1190 (10th Cir. 2022) ..............................................................................................5

*Xiong ex rel. D.M. v. Minn. State High Sch. League*,
  917 F.3d 994 (8th Cir. 2019) ..................................................................................................9

*Dakota, Minn. & E. R.R. Corp. v. South Dakota*,
  362 F.3d 512 (8th Cir. 2004) ..................................................................................................3

*Entergy, Ark., Inc. v. Nebraska*,
  210 F.3d 887 (8th Cir. 2000) ..................................................................................................8

*FTC v. Ken Roberts Co.*,
  276 F.3d 583 (D.C. Cir. 2001) ................................................................................................6

*Heart of Am. Grain Inspection Serv., Inc. v. Mo. Dep't of Agric.*,
  123 F.3d 1098 (8th Cir. 1997) ................................................................................................5

*Hughes v. Talen Energy Mktg., LLC*,
  578 U.S. 150 (2016)................................................................................................................5

*KalshiEX LLC v. Johnson*,
  2026 WL 1223373 (D. Ariz. May 5, 2026) ............................................................................9

*KalshiEX, LLC v. Flaherty*,
  172 F.4th 220 (3d Cir. 2026) ....................................................................................6, 7, 8, 9

*Leist v. Simplot*,
  638 F.2d 283 (2d Cir. 1980)....................................................................................................6

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*,
  456 U.S. 353 (1982)................................................................................................................5

*Oncale v. Sundowner Offshore Servs., Inc.*,
  523 U.S. 75 (1998)..................................................................................................................4

*In re President Casinos, Inc.*,
   360 B.R. 262 (B.A.P. 8th Cir. 2007)................................................................................9

*Pub. Serv. Co. of Colo. v. Cont'l Cas. Co.*,
   26 F.3d 1508 (10th Cir. 1994) .......................................................................................3

*Puerto Rico v. Franklin Cal. Tax-Free Tr.*,
   579 U.S. 115 (2016).......................................................................................................5

*Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'rs*,
   826 F.3d 1030 (8th Cir. 2016) .......................................................................................9

*Shaw v. Delta Air Lines, Inc.*,
   463 U.S. 85 (1983).........................................................................................................2

*Slaney v. Int'l Amateur Athletic Fed'n*,
   244 F.3d 580 (7th Cir. 2001) .........................................................................................5

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014)....................................................................................................2, 9

*Tafflin v. Levitt*,
   493 U.S. 455 (1990).......................................................................................................5

*Trump v. CASA, Inc.*,
   606 U.S. 831 (2025).......................................................................................................9

*Ex parte Young*,
   209 U.S. 123 (1908).......................................................................................................2

**Statutes**

7 U.S.C. § 1a......................................................................................................................4

7 U.S.C. § 2 ............................................................................................................... *passim*

7 U.S.C. § 5........................................................................................................................7

7 U.S.C. § 7a-2...............................................................................................................1, 8

7 U.S.C. § 13a-2.................................................................................................................6

Iowa Code § 99B.1 .............................................................................................................2

Iowa Code § 99D.7 .............................................................................................................2

Iowa Code § 99E.3 .............................................................................................................2

Iowa Code § 99F.4..............................................................................................................2

Iowa Code § 99F.7A ..................................................................................................................7

Iowa Code § 99F.9 ....................................................................................................................7

Iowa Code § 725.7 ....................................................................................................................2

Iowa Code § 725.13 ..................................................................................................................2

**Other Authorities**

17 C.F.R. § 1.31 .......................................................................................................................9

17 C.F.R. § 38.151 ...................................................................................................................7

17 C.F.R. § 38.950 ...................................................................................................................9

17 C.F.R. § 38.1101 .................................................................................................................9

CFTC Amicus Br., *N. Am. Derivatives Exch., Inc. v. Nevada*, No. 25-7187 (9th
    Cir. Feb. 17, 2026), Dkt. No. 38.2 ...............................................................................6, 7

*Contingency*, Merriam-Webster's Collegiate Dictionary (11th ed. 2003)......................................3

*Event*, Webster's II New College Dictionary (3d ed. 2005) ................................................................3

Further Definition of "Swap,"
    77 Fed. Reg. 48,208, 48,214 (Aug. 13, 2012)..........................................................................4

H.R. Rep. No. 93-1383 (1974) (Conf. Rep.)................................................................................6

H.R. Rep. No. 97-565, pt. 1 (1982)................................................................................................5

H.R. Rep. No. 106-711, pt. 2 (2000).............................................................................................5

Order on Plaintiffs' Motions for Preliminary Injunction,
    *KalshiEX LLC v. Ellison*, No. 26-cv-2778 (D. Minn. July 27, 2026),
    Dkt. No. 51.....................................................................................................................1, 6, 8

Prediction Markets; Public Interest Determinations,
    91 Fed. Reg. 35,806, 35,815, 35,836 (proposed June 12, 2026)
    (to be codified at 17 C.F.R. pt. 40) .......................................................................................4, 8

## PRELIMINARY STATEMENT

The Supremacy Clause violation here is plain:  Federal law grants a federal agency, the CFTC,[1] "exclusive jurisdiction" over event contracts traded on federally regulated DCMs.  7 U.S.C. § 2(a)(1)(A).  Federal law also grants the CFTC—and only the CFTC—the discretion to determine whether certain kinds of event contracts, including those involving "gaming," should be barred on DCMs as "contrary to the public interest."  *Id.* § 7a-2(c)(5)(C)(i).  Iowa's threats to prosecute Kalshi under state gambling laws flout these federal commands by asserting concurrent state jurisdiction over event contracts traded on DCMs and usurping the CFTC's discretion to decide which event contracts should be permitted to trade.  Federal courts around the country have recognized as much and enjoined analogous state enforcement efforts against Kalshi.  Indeed, just this week, the District of Minnesota preliminarily enjoined state officials from enforcing state law against Kalshi.  *See* Order on Plaintiffs' Motions for Preliminary Injunction, *KalshiEX LLC v. Ellison*, No. 26-cv-2778 (D. Minn. July 27, 2026), Dkt. No. 51 ("MN Order").  This Court should do the same here.

## ARGUMENT

**A.    Kalshi Has Standing and a Cause of Action Under *Ex parte Young*.**

   1.    <u>Kalshi Has Standing to Seek Relief.</u>

Defendants' argument that Kalshi lacks standing rests on a mischaracterization of the relief Kalshi seeks.  Defs.' Opp'n to Pl.'s Mot. for Prelim. Inj. 8-10, Dkt. No. 24 ("Opp.").  Kalshi does not ask this Court to strip Iowa of its general authority to enforce its gambling or criminal laws.  Kalshi's Motion and Complaint are expressly limited to enjoining Defendants from enforcing the identified chapters, or "any other Iowa law," which would necessarily include Iowa Code Chapter 99E, only insofar as they are applied "to regulate transactions traded or executed on Kalshi's" DCM.  Mot. 1; *see* Compl. 24, Dkt. No. 1.

---

[1] All capitalized terms used but not defined herein are set out in Plaintiff's Brief and Memorandum of Law in Support of a Preliminary Injunction, Dkt. No. 20-1 (the "Motion" or "Mot.").

Kalshi has identified with precision the conduct Defendants have stated they view as unlawful—Kalshi's offering of sports event contracts to Iowa residents on its federally licensed DCM—and the statutes Defendants themselves invoke to describe that conduct as criminal "bookmaking" and unlawful "gambling." *See* Iowa Code §§ 725.7, 725.13, 99B.1(18); Compl. ¶¶ 61-62. The credible threat that Defendants will enforce those laws against Kalshi's DCM-traded event contracts, together with associated criminal exposure and compliance costs, is a concrete, particularized injury traceable to Defendants and redressable by the targeted, as-applied injunction Kalshi seeks. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158-59 (2014); *281 Care Comm. v. Arneson*, 638 F.3d 621, 627 (8th Cir. 2011). The District of Minnesota had no difficulty enjoining state officials from enforcing state law against Kalshi, nor did federal courts in Nevada, New Jersey, Tennessee, and Arizona.

Defendants' argument that Kalshi does not establish traceability and redressability (Opp. 9-10) fails for the same reason. A state official is a proper defendant under *Ex parte Young*, 209 U.S. 123 (1908), so long as she has "some connection with the enforcement of the act." *281 Care Comm.*, 638 F.3d at 632 (citation omitted). That "connection does not need to be primary authority," nor need the official "have the full power to redress a plaintiff's injury." *Id* at 632-33. The Iowa AG possesses general authority to enforce Chapter 725, and she personally participated in a "deposition" style meeting at which she stated her office had been "looking at" Kalshi "for a long time." Compl. ¶ 61. The IRGC Defendants are charged with implementing Chapters 99D, 99E, and 99F—the very chapters Defendants say define the sports wagering activity Kalshi is purportedly conducting unlawfully. *See* Iowa Code §§ 99D.7, 99E.3, 99F.4.

2.    Kalshi's Claims Are Authorized Under *Ex parte Young*.

*Ex parte Young* squarely authorizes this suit against the IRGC's Administrator, Chair, Vice Chair, and Members in their official capacities. "It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from" enforcing state law that is "pre-empted by a federal statute." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983). Courts in this Circuit have accordingly held that a party may seek prospective injunctive relief under *Ex parte Young* to

preclude enforcement of a preempted state statute. *See Dakota, Minn. & E. R.R. Corp. v. South Dakota*, 362 F.3d 512, 517 (8th Cir. 2004).

Defendants primarily argue (Opp. 11) that Kalshi is not "about to" be subject to enforcement because the Iowa AG has agreed not to enforce Iowa's gambling laws against Kalshi during the pendency of the Motion. But that pledge is a tacit concession that, absent the pledge this Motion prompted, enforcement is a real prospect—as confirmed by the Iowa AG's refusal to disclaim *future* enforcement and a written admonition that Kalshi "familiarize yourself with Iowa's laws and make all due efforts to comply with them." Blankinship Decl. Ex. A, at 5. A "credible threat of prosecution" is sufficient to establish pre-enforcement standing, *281 Care Comm.*, 638 F.3d at 627 (citation omitted), and where a state official with enforcement authority poses that threat, *Ex parte Young* supplies the cause of action to enjoin her, *id.* at 632. Defendants cannot simultaneously argue that an injunction is unnecessary because enforcement is *not* imminent and intolerable because it will *prevent* imminent enforcement. *See* Opp. 2.

**B.      The CEA Preempts Iowa's Gambling Laws as Applied to Kalshi's Event Contracts.**

   1.      <u>Kalshi's Sports Event Contracts are Swaps.</u>

Defendants try to escape the CEA's exclusive jurisdiction provision by asserting that Kalshi's sports event contracts do not fit within the statutory definition of "swap" (Opp. 11-15), but that is both irrelevant and wrong. The CFTC's exclusive jurisdiction extends to all "agreements" traded on DCMs, and Kalshi's event contracts are certainly DCM-traded "agreements," even if they were not swaps. 7 U.S.C. § 2(a)(1)(A).

Defendants are wrong to assert (Opp. 12) that Kalshi's event contracts are not swaps because they depend on outcomes rather than events. An "outcome" is simply one meaning of "event." *See, e.g.*, *Event*, Webster's II New College Dictionary (3d ed. 2005) ("[t]he actual outcome or final result"); *Pub. Serv. Co. of Colo. v. Cont'l Cas. Co.*, 26 F.3d 1508, 1514-15 (10th Cir. 1994). The relevant definition also covers a "contingency"—"something liable to happen as . . . [a] result of something else," *Contingency*, Merriam-Webster's Collegiate Dictionary (11th ed. 2003)—which easily encompasses a team winning a game.

3

Defendants argue (Opp. 13-14) that the CEA's definition of "swap" refers exclusively to contracts involving instruments and measures that traditionally and directly affect commodity prices, such as currency exchange rates and energy costs. Such limits are nowhere in the text, which refers to "potential" financial and economic consequences. 7 U.S.C. § 1a(47)(A)(ii). That the definition of "swap" was added partially in response to the 2008 financial crisis (Opp. 14) does not narrow it. Statutes often reach beyond the "principal evil" that animated them, and "it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998).

Defendants assert (Opp. 12-14) that sports event contracts are not swaps because sports events lack consequences "in the sense the CEA requires," insisting that the event itself must have consequences "without looking at externalities like potential downstream financial consequences." The statute contains no such "downstream" qualifier; it requires only that an event be "associated with"—*i.e.*, connected to—a "potential" economic consequence. 7 U.S.C. § 1a(47)(A)(ii). Kalshi's sports event contracts readily satisfy that plain-text requirement. Defendants' contrary view would engraft a "direct" or "inherent" requirement that Congress did not write.

Defendants' further assertion (Opp. 13-14) that Kalshi's reading "knows no limiting principle" and would sweep in state-regulated sportsbooks, slot machines, and even "service contracts, mortgages, and prenuptial agreements" is wrong. The CFTC's exclusive jurisdiction extends only to instruments "traded or executed on" a DCM. 7 U.S.C. § 2(a)(1)(A). Traditional sports bets, casino games, and everyday consumer contracts "are not traded on an organized market or over the counter," Further Definition of "Swap," 77 Fed. Reg. 48,208, 48,214 (Aug. 13, 2012), leaving Iowa free to apply its gambling laws to *off*-DCM activity. The CFTC's recent Notice of Proposed Rulemaking supplies still further limits on which sports event contracts may be traded on a DCM. *See* Prediction Markets; Public Interest Determinations, 91 Fed. Reg. 35,806, 35,815, 35,836 (proposed June 12, 2026) (to be codified at 17 C.F.R. pt. 40).

4

2.        Iowa Law is Preempted.

***Express Preemption***:   The CEA expressly gives the CFTC "exclusive jurisdiction" over transactions on DCMs.   7 U.S.C. § 2(a)(1)(A).   The Supreme Court has held that state law is preempted where a federal agency's jurisdiction is "exclusive."   *Hughes v. Talen Energy Mktg., LLC*, 578 U.S. 150, 163 (2016).   Courts have found that statutes containing similar language preempt parallel state regulation.   *See Heart of Am. Grain Inspection Serv., Inc. v. Mo. Dep't of Agric.*, 123 F.3d 1098, 1103 (8th Cir. 1997) (statutory grant of exclusive "power, jurisdiction, and authority" to Secretary of Agriculture preempted state law (citation omitted)); *BNSF Ry. Co. v. Hiett*, 22 F.4th 1190, 1194 (10th Cir. 2022) (statutory grant of "exclusive jurisdiction" to federal agency preempted state law); *Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 595 (7th Cir. 2001) (similar).

Defendants suggest (Opp. 16-17) the exclusive jurisdiction provision does not expressly preempt state law because Congress used different phrases elsewhere in the CEA.   But there is no magic words requirement for preemption.   *See Hughes*, 578 U.S. at 163.   And the CEA's other preemption provisions reinforce this reading.   Section 16(e)(2) preempts state gaming and bucket shop laws for certain ***off***-DCM transactions; when Congress enacted that provision, it recognized that "the current" CEA already "supersedes and preempts" state law "in the case of transactions conducted on a registered entity," like a DCM.   H.R. Rep. No. 106-711, pt. 2, at 71 (2000).

Defendants next argue (Opp. 16-17) that the provision allocates authority only between federal agencies, not between federal and state regulators.   *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 386-87 (1982).   *Merrill Lynch* does not so hold, and the Supreme Court has since made clear that the "presumption [favoring] concurrent jurisdiction [is] rebutted" where, as here, Congress confers exclusive jurisdiction on a federal authority.   *Tafflin v. Levitt*, 493 U.S. 455, 459 (1990); *see also Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016).   Congress contemplated this jurisdictional split in the 1974 amendments granting the CFTC regulatory authority that "thereby preempt[ed] any State regulatory laws."   H.R. Rep.

5

No. 97-565, pt. 1, at 44 (1982); *see also KalshiEX, LLC v. Flaherty*, 172 F.4th 220, 230 (3d Cir. 2026).

Defendants also argue (Opp. 15-16, 18) that the CEA's savings clauses and its fraud-enforcement provision, 7 U.S.C. § 13a-2(7), show that the CEA does not preempt state gambling laws.  Not so.  The savings clause immediately following the exclusive jurisdiction grant preserves state authority *only* "except as hereinabove provided"—that is, *except* with respect to the CFTC's "exclusive jurisdiction" over DCMs.  *Id.* § 2(a)(1)(A); MN Order at 26.  And Section 13a-2's fraud carve-out reinforces preemption:  Congress's decision to preserve a specific role for state anti-fraud enforcement while leaving no comparable carve-out for gambling enforcement confirms that state gambling laws targeting on-DCM instruments are preempted.  *See Arizona v. United States*, 567 U.S. 387, 406 (2012).

*Field Preemption*:  Congress preempted the field of regulating DCMs.  It gave the CFTC "exclusive jurisdiction" over trading on DCMs, thus "supersed[ing]" the "regulatory authorities" of "any State," 7 U.S.C. § 2(a)(1)(A); intended to "preempt the field," H.R. Rep. No. 93-1383, at 35 (1974) (Conf. Rep.); and defined the "[j]urisdiction of [s]tates" to *exclude* the right to regulate DCMs, 7 U.S.C. § 13a-2(1).  Courts have long agreed.  *See, e.g.*, *Leist v. Simplot*, 638 F.2d 283, 322 (2d Cir. 1980); *FTC v. Ken Roberts Co.*, 276 F.3d 583, 590-91 (D.C. Cir. 2001).

Defendants' reliance on Iowa's "police power" (Opp. 2, 15, 20) is misguided.  As the Third Circuit held, the proper field is "the regulation of trading on a DCM," not the broader field of "gambling." *Flaherty*, 172 F.4th at 229.  The question is not whether the CEA displaces all state gambling regulation—it does not—but whether Congress fully occupied the narrower field of regulating trading on DCMs.  The answer is yes.  Were it otherwise, states could evade federal preemption by relabeling federally regulated financial instruments as "gambling."  As the CFTC has explained, "States cannot invade the CFTC's exclusive jurisdiction" "by re-characterizing swaps trad[ed] on DCMs as illegal gambling."  CFTC Amicus Br. at 2.

*Conflict Preemption*:  Applying Iowa's gambling laws to criminalize trading on Kalshi would conflict with the CEA in multiple respects.

*First*, Defendants err (Opp. 22-23) in recasting the impartial access rule as a mere anti-discrimination check that a state-by-state exclusion would satisfy. Forcing Kalshi to match only intrastate traders would fragment a single nationwide market into fifty siloed liquidity pools, a form of geographic price discrimination antithetical to the impartial access Core Principle. *See* 17 C.F.R. § 38.151(b); 7 U.S.C. § 5(a). The CFTC has expressly rejected Defendants' reading, explaining that it is "impossible" for DCMs to provide impartial access and comply with state gaming laws. *See* CFTC Amicus Br. 23-24, 26-27.

*Second*, Defendants argue (Opp. 21-23) that Iowa's licensing requirements mirror CEA and DCM Core Principles, and that Kalshi has shown only that compliance is "challeng[ing]," not impossible. Not so. The linchpin of Iowa's regime is the requirement that any sports wagering operator partner with an Iowa-licensed casino or racetrack, Iowa Code §§ 99F.9(4)(a)(1), (b), 99F.7A(3), which—together with Iowa's in-state-only geolocation requirement, § 99F.9(4)(a)(3)—is fundamentally incompatible with a nationwide DCM required to provide impartial access. That state-licensed sportsbooks have partitioned their operations by state, or that Kalshi has been forced to geofence other jurisdictions, does not change the analysis. Defendants' argument that not all Iowa Code Chapters conflict with the CEA's requirements (Opp. 22-23) supplies no basis for allowing enforcement of peripheral provisions; the injunction Kalshi seeks is expressly limited to enforcement "to regulate transactions traded or executed on Kalshi's" DCM. Mot. 1; Compl. 24.

*Third*, forcing Kalshi to comply with Iowa law would conflict with Congress's goal to bring futures markets "under a uniform set of regulations." *Am. Agric. Movement, Inc. v. Bd. of Trade of Chi.*, 977 F.2d 1147, 1156 (7th Cir. 1992); *see* Mot. 20-21. As the Third Circuit held, enforcement of state gambling laws "would create an obstacle to executing the [CEA]" and produce "exactly the patchwork that Congress replaced wholecloth by creating the CFTC." *Flaherty*, 172 F.4th at 230.

*Fourth*, Iowa law flatly conflicts with the Special Rule, which gives the CFTC discretion to bar certain event contracts from DCMs if it determines they are contrary to the public interest.

7 U.S.C. § 7a-2(c)(5)(C)(i).  Defendants call the Special Rule (Opp. 19-21) a "backstop" against sports gambling on DCMs, but the Rule provides that the CFTC "may"—not must—prohibit certain event contracts, and grants that discretion to the CFTC alone, ***not to fifty state regulators***. *See* MN Order at 31 (Special Rule suggests "Congress intended DCM-based transactions . . . to be governed by the CFTC").  The CFTC has confirmed this.  *See* 91 Fed. Reg. at 35,815 (Special Rule is "a discretionary review framework rather than a self-executing *per se* prohibition").

**C.      The Other Preliminary Injunction Factors Weigh in Kalshi's Favor.**

1.        <u>Kalshi Will Suffer Irreparable Harm Without a Preliminary Injunction.</u>

Defendants recycle (Opp. 24) their imminence argument as a challenge to irreparable harm. As explained above, the short-form nature of the Iowa AG's forbearance only confirms the credible threat of enforcement.  *See supra* Argument A.2.  The IRGC Defendants, moreover, have made no representation of forbearance at all.  Defendants' observation (Opp. 23-24) that state-regulated sportsbooks geofence to comply with state law is irrelevant, as they are not DCMs subject to CFTC Core Principles and the CEA.  *See supra* Argument B.2; *see also* Sottile Decl. ¶¶ 17, 18.

Defendants' suggestion (Opp. 24) that Kalshi's harms are "largely monetary" and that any fines could be "challenged and vacated if Kalshi prevails on the merits" ignores that fines and compliance costs could not be recouped from state officials shielded by sovereign immunity.  *See Entergy, Ark., Inc. v. Nebraska*, 210 F.3d 887, 899 (8th Cir. 2000) (recognizing that irreparable harm exists where an action to recover damages is barred by sovereign immunity); MN Order at 39-40.  Compliance would require Kalshi to forgo a significant portion of its business, impose burdensome geofencing costs, and potentially liquidate positions in a manner harmful to users in Iowa and nationwide.  The Third Circuit has held that Kalshi faces irreparable harm in precisely these circumstances.  *Flaherty*, 172 F.4th at 231-32; *see* MN Order at 39-40 (DCM subjected to state law can "either continue to offer their event contracts . . . and face potential felony charges" or "take steps to exit the market" and "face substantial liability" to customers).

Defendants also argue (Opp. 24) that Kalshi's "year-plus delay in seeking relief after it started offering sports event contracts undercuts any claimed urgency."  But the relevant clock for

pre-enforcement relief runs from the point Kalshi faced a credible threat of enforcement, not from the point it listed the challenged contracts. *See Susan B. Anthony List*, 573 U.S. at 158-59.

2.  Balance of the Equities and Public Interest.

Defendants claim (Opp. 24-25) that the public interest is served by maintaining the State's ability to enforce its gambling laws. But "it is always in the public interest to prevent the violation of a party's constitutional rights." *Xiong ex rel. D.M. v. Minn. State High Sch. League*, 917 F.3d 994, 1004 (8th Cir. 2019) (citation modified); *see also* Mot. 25; *Flaherty*, 172 F.4th at 231-32. Defendants' contention (Opp. 24-25) that the equities favor the State because its statute is motivated by public safety does not shift the balance. The CFTC's regulatory framework addresses these concerns through market surveillance, anti-manipulation provisions, and enforcement authority. *See, e.g.*, 17 C.F.R. §§ 38.950, 1.31, 38.1101(a)(2). Allowing Iowa to prosecute conduct that Kalshi's federal regulator considers lawful undermines the balance Congress struck in the CEA. *Arizona*, 567 U.S. at 402.

Defendants' reliance on *Trump v. CASA, Inc.*, 606 U.S. 831 (2025) (Opp. 24-25), is misplaced. *CASA* concerned the scope of universal injunctions; it did not disturb the settled rule that a State "has no legitimate interest" in enforcing a preempted law, as courts have continued to recognize. *See KalshiEX LLC v. Johnson*, 2026 WL 1223373, at *9 (D. Ariz. May 5, 2026).

## CONCLUSION

For the foregoing reasons, the Court should issue a preliminary injunction.[2]

---

[2] Any bond should be nominal. A court may issue preliminary injunctions with no bond, or a minimal bond, "where the damages resulting from a wrongful issuance of an injunction have not been shown." *Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'rs*, 826 F.3d 1030, 1043 (8th Cir. 2016). The party seeking a bond must establish that it "bear[s] a rational relationship to the defendant's probable damages." *In re President Casinos, Inc.*, 360 B.R. 262, 266 (B.A.P. 8th Cir. 2007). Defendants have identified no concrete, non-speculative damages from an injunction preserving the status quo. Their proposal conflates a state forfeiture remedy with Defendants' damages (they have none), and does not apply in any event because Kalshi does not receive "wagering receipts."

DATED: July 31, 2026

Respectfully submitted,

By: /s/ *Grant R. Mainland*
**MILBANK LLP**

Grant R. Mainland (*pro hac vice*)
Andrew L. Porter (*pro hac vice*)
55 Hudson Yards
New York, NY 10001
Telephone: 212-530-5000
Facsimile: 212-530-5219

Neal Katyal (*pro hac vice*)
Joshua B. Sterling (*pro hac vice*)
William E. Havemann (*pro hac vice*)
1101 New York Avenue NW
Washington, D.C. 20005
Telephone: 202-835-7500
Facsimile: 202-263-7586

and

By: /s/ *Andrew J. Graeve*
**WEINHARDT & LANTZ, P.C.**

Mark E. Weinhardt          AT0008280
Andrew J. Graeve          AT0015662
Jason R. Smith              AT0014862
2600 Grand Avenue, Suite 450
Des Moines, IA 50312
Telephone: 515-244-3100
mweinhardt@weinhardtlantz.com
agraeve@weinhardtlantz.com
jsmith@weinhardtlantz.com

*Attorneys for Plaintiff KalshiEX LLC*

PROOF OF SERVICE

The undersigned certifies that the foregoing instrument was served upon the parties to this action by serving a copy upon each of the attorneys of record on July 31, 2026 via CM/ECF.

Signature:      /s/ *Grant R. Mainland*